UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAROL V. WHITENER                              CIVIL ACTION

VERSUS                                         NO. 15-3504

CAROLYN W. COLVIN, ACTING                      SECTION "J" (2)
COMMISSIONER OF SOCIAL SECURITY

## ORDER ON MOTION;
## FINDINGS AND RECOMMENDATION

Plaintiff, Carol V. Whitener, proceeding pro se, seeks judicial review pursuant to

Section 405(g) of the Social Security Act (the "Act") of the final decision of the

Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's

claim for disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. § 423.

This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. §

636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Whitener filed her application for DIB on March 29, 2013, alleging disability since

May 30, 2007, due to chronic fatigue syndrome, fibromyalgia and ulcerative proctitis.  (Tr.

146-52, 174).  After her claims were denied at the agency level, plaintiff requested a

hearing before an Administrative Law Judge (ALJ), which was held on December 11,

2013.  (Tr. 63-91).  The ALJ issued a decision denying the application on March 21, 2014.

(Tr. 42-50).  After the Appeals Council denied review on June 12, 2015, the ALJ's decision

became the Commissioner's final decision for purposes of this court's review.  (Tr. 9-15).

Plaintiff filed a timely memorandum in support of her appeal.  Record Doc. No. 16.

Defendant filed a timely reply memorandum.  Record Doc. No. 17.

## II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.   The Appeals Council erred by failing to consider new and material evidence submitted to it that related to the relevant time period.[1]

B.   The ALJ erred by failing to consider whether Whitener's mental impairments meet Listing 12.00 for mental disorders.

C.   The ALJ failed to analyze plaintiff's mental impairments properly.

D.   The ALJ improperly considered plaintiff's non-substantial gainful work activity that occurred after her alleged onset date.

E.   The ALJ mischaracterized Whitener's daily activities and her testimony.

F.   The ALJ mischaracterized the evidence from plaintiff's treating physician Lawrence Giambelluca, M.D.

G.   The ALJ failed to analyze evidence from plaintiff's treating physician Ahmet Bedestani, M.D., properly.

H.   The ALJ's residual functional capacity assessment is not supported by substantial evidence and the ALJ's questions to the vocational expert did not incorporate all of plaintiff's limitations.

Plaintiff submitted voluminous materials from outside the administrative record in

support of her memorandum.  The court treats this submission as a motion to submit new

evidence.  Based on that evidence in combination with the entire record, Whitener asks the

---

[1]This statement combines plaintiff's assignments of error Nos. 4 and 9, both of which concern the evidence submitted to the Appeals Council.

court to find either that she is disabled or that the new evidence warrants a remand to the Commissioner for additional findings of fact.

Having considered the record, the submissions of the parties and the applicable law, and for the reasons discussed below, IT IS ORDERED that plaintiff's motion to supplement the record with new evidence is DENIED.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Whitener met the insured status requirements of the Act through March 31, 2013.  To be entitled to DIB, she must establish disability on or before that date.

2.   She has not engaged in substantial work activity since the alleged onset date of May 30, 2007 through her date last insured of March 31, 2013.

3.   Through her date last insured, plaintiff had severe impairments consisting of chronic fatigue syndrome, fibromyalgia and ulcerative chronic proctitis.[2] Her traumatic brain disorder and post-traumatic stress disorder are not medically determinable impairments.

4.   Through her date last insured, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.

5.   Whitener has the residual functional capacity to perform light work, except that she can occasionally lift/carry twenty pounds and frequently lift/carry ten pounds; stand/walk for a total of six hours in an eight-hour day; sit for a total of six hours in an eight-hour day; never climb ladders, ropes or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

6.   Her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, her statements concerning

---

[2]Proctitis is inflammation of the mucous membrane of the rectum.  Stedmans Medical Dictionary 724850 (avail. on Westlaw).

the intensity, persistence and limiting effects of these symptoms are not entirely credible.

7.   Through the date last insured, plaintiff could perform her past relevant work as an elementary school teacher.

8.   She was not under a disability from May 30, 2007, the alleged onset date, through March 31, 2013, the date last insured.

(Tr. 44-46, 49-50).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing

Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The

Commissioner, rather than the courts, must resolve conflicts in the evidence.  McCaskill

v. Dep't of Health & Human Servs., 640 F. App'x 331, 336 (5th Cir. 2016) (citing Perez,

415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders

v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence,

regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma,

503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in

its entirety to determine the reasonableness of the decision reached and whether substantial

evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing

Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by

substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir.

2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that she is

unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that

provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2014).  The regulations

include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F.  App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Alexander</u>, 412 F. App'x 720-21; <u>Perez</u>, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  <u>Chrisner v. Astrue</u>, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991)); <u>accord</u> <u>Perez</u>, 415 F.3d at 463.

B.    <u>Factual Background</u>

Whitener testified at the hearing that she completed college, lives with her husband, is four feet eleven inches tall and weights 98 pounds.  (Tr. 63-64).  She said she last worked as a teacher in 2007, but stopped working because her physical and mental symptoms were severe and she was having trouble teaching.  (Tr. 64-65).

Plaintiff stated that, at that time, she had difficulty understanding and processing information; made a lot of errors, such as not being able to spell words that she knew how to spell; could not complete her train of thought or follow directions; and had to ask people to repeat things, especially if there were background noises.  (Tr. 65).  She said that her gastroenterologist, Dr. Mayer, treated her at that time for abdominal pain, rectal bleeding and bowel and urinary problems.  She testified that she sometimes had to leave her classroom suddenly because of these problems and sometimes had accidents when she did

not reach the bathroom quickly enough.  She stated that these events sometimes happened daily and other times not at all.  (Tr. 66).

Whitener said she discussed her health issues with her principal, who never asked her to resign, but she resigned because of these problems.  She testified that the teacher who replaced her later had to leave, so plaintiff returned to her job at the school for a few months.  (Tr. 67-68).  She stated that she did not have much difficulty when she was at home where she could rest and not worry about whether she would be able to get to the bathroom timely.  She said she did some part-time tutoring for a few hours per week during the following year.  (Tr. 68, 91).

Plaintiff testified that she had surgery to insert a mesh sling to correct her urinary incontinence issues.  She said she follows her diet and avoids caffeine, which helps prevent contractions or leakage.  She said she sometimes has urinary incontinence if her bladder is full and she is either constipated or needs to have a bowel movement and cannot get to a bathroom.  She stated that her bowel problems sometimes cause diarrhea.  (Tr. 68-69). She testified that she had abdominal pain and needed to use the bathroom while her husband was driving her to the hearing that morning, and they stopped so she could use the bathroom.  (Tr. 69-70).  She stated that, if she drives, the abdominal pain and tension of worrying whether she will have an accident add to her anxiety.

Regarding her fibromyalgia, Whitener testified that sometimes her chest was painful when her husband touched her and when a student hugged her while she was still teaching.

(Tr. 70).  She said that pressure on certain points on her body, such as shoulders and hips, causes pain.  She stated that she stretches a lot and that it is painful to lie on her hips while stretching.  She testified that sometimes she is not in pain, but she feels a constant malaise.  She said she sometimes has pain in her knees or all over her body, and that the body aches feel like she has the flu.  She stated that the flu-like symptoms happen less frequently than every month and vary depending on what she does.  (Tr. 71-72).

Plaintiff said she does not know what triggers her symptoms, but can cite specific examples that occurred after experiencing physical exhaustion.  She stated that she does not know whether mental exhaustion causes symptoms.  She testified that she went to a parade with two elderly relatives and felt fine carrying two folding chairs a couple of blocks to the parade, but felt light-headed while standing to watch the parade.  (Tr. 72-73).  She said she needs to sit or lie down when she feels light-headed.  She stated that she stayed for the whole parade and walked back to the car carrying her chair and a bag of vegetables she had caught, but that her whole body hurt two days later and she had to spend several days in bed.  (Tr. 73).

Whitener testified that she typically has cycles of good days when she feels she can be active and bad days when her symptoms worsen so that she needs to lie down and rest.  She said her symptoms worsen if she does more work and she may need one or two days to recuperate from that, but if she has flu-like symptoms, then her recovery time is similar to recovering from the flu.  (Tr. 74).  She stated that her symptoms usually worsen one to

two days after she engages in some activity.  She said she once went to a cooking class at a mall, where she felt faint and had to sit down while standing for the class.  She stated that she felt better when sitting, but then walked to Macy's, where she could lie down in a dressing room.

Plaintiff said she sometimes drops dishes and sometimes feels pain and fatigue when she tries to "do things."  (Tr. 75-76).  She estimated that she typically has 21 bad days in a month.  She testified that having flu-like symptoms increases the number of days when she feels significant malaise and pain.  She said she sometimes needs only a day or two of rest.  She stated that she can go to one activity per day, such as a doctor's appointment or church function, if she paces herself, engages in her everyday routine at home and the flu-like symptoms are not triggered.  (Tr. 76).

Whitener testified that she can stand for one hour if she is not light-headed or fatigued and can sit for three to four hours before needing to stand up or lie down.  (Tr. 77-78).  She stated that sitting for that long might be overexertion for her because sitting requires a lot of energy.  She said she can lift a gallon of milk with two hands, but probably could not with just one hand.  She stated that Dr. Espinoza told her not to lift more than five pounds.  She said she uses light weights when she exercises.  (Tr. 78-79).  She testified that she can walk for a mile when she feels good and that she walks that far in her neighborhood in about 35 minutes.  (Tr. 79-80).

Plaintiff stated that, on a typical day, she needs to recline or lie down seven times for five to twenty minutes at a time. (Tr. 80-81). She said that, if she were working, she would need to lie down for more time than during 15-minute breaks in the morning and afternoon and a 30-minute lunch break.

Whitener testified that she sometimes feels uncomfortable in social situations because she cannot communicate as well as she would like and because a lot of noise startles her or makes her anxious. She stated that she has had very stressful events in her life, such as pressing charges against her brother a couple of times, her father being killed and a subsequent trial, her brothers being in jail and her having to go to court. She testified that testifying before the ALJ made her anxious and caused painful memories and feelings that made it more difficult for her to testify. (Tr. 82). She said that a job that requires dealing with people would be problematic for her.

Plaintiff testified that these stressful family events happened both before and during the time when she stopped working. She stated that her house was damaged by Hurricane Katrina and that interior repairs were being done one year later, just before she resumed work for the school year during which she stopped teaching. She said she started to feel fear, fatigue and pain at that time. (Tr. 83-84). She stated that she pressed charges against her brother in 1997 and he received a five-year sentence, but was found incompetent. She testified that he eventually got out of prison and knew where she worked, which caused her stress and anxiety, although he never came to her school. She said she was a caretaker for

another brother who went into a group home.  She testified that her father was killed in 1978 and that there had been a lot of violence and "scary situations" when she had to live with other people because her "safety could have been an issue."  She confirmed that these events happened over the course of her life, not just when she stopped working.  (Tr. 84).

Whitener stated that she struggles with doing daily activities and has to take breaks, but is able to accomplish things and feel good on some days.  (Tr. 85).  She estimated that, in her best month, she typically has three very bad days.  (Tr. 86).  Although she previously said she has 21 bad days in her worst month, she stated that she could have bad days for an entire month or a few consecutive months.

Plaintiff testified that her husband drove and dropped her off on the day she went to a cooking class.  She said she sometimes drives and feels fine.  She stated that she has an exaggerated startle response and sometimes feels very jumpy or like she is in a fog, so she worries that she will overreact when driving.  She testified that she often has difficulty concentrating and many times has left her purse or other belongings in public places.  She said she is more dependent on her husband to help her remember things, like whether she has brought a coat with her, and that she does not think it is wise for her to drive with so much "brain fog."  (Tr. 87-88).

Whitener stated that she takes tramadol,[4] Canasa,[5] zolpidem[6] and non-prescription supplements daily.  She said that tramadol causes occasional nausea and might cause headaches, but she is not sure because she sometimes gets headaches anyway.  (Tr. 89).

C.    Vocational Expert Testimony

A vocational expert, Elizabeth Wheeler, testified at the hearing that plaintiff's past relevant work as an elementary school teacher was light, skilled work.  (Tr. 91).  The ALJ posed a hypothetical of a person with the same age, education and work experience as Whitener, who can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds.  Wheeler stated that such a person could perform plaintiff's past relevant work as an elementary school teacher.  (Tr. 92).

The ALJ posed a second hypothetical of a person with the same age, education and work experience as Whitener, who can occasionally lift and carry ten pounds; frequently lift and carry less than ten pounds' stand and walk for two hours in an eight-hour day; sit

---

[4]Tramadol (brand names:  ConZip, Ultram) is a narcotic-like pain reliever used to treat moderate to severe pain.  Drugs.com (Cerner Multum, Inc. 1996-2017; revision date 2016-09-30), https://www.drugs.com/tramadol.html (visited Jan. 10, 2017).

[5]Canasa (generic name:  mesalamine) is "5-aminosalicylic acid (5-ASA)" suppositories "used for treating various forms of mild to moderate inflammation of the colon."  Id. (review date Nov. 3, 2016), https://www.drugs.com/cdi/canasa-suppositories.html (visited Jan. 10, 2017).

[6]Ambien (generic name:  zolpidem) is a sedative used to treat insomnia.  Id. (revision date 2016-09-19), https://www.drugs.com/ambien.html (visited Jan. 10, 2017).

for six hours in an eight-hour day; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. Wheeler stated that such a person could not perform plaintiff's past relevant work because the hypothetical's residual functional capacity was limited to sedentary work. (Tr. 92-93). Wheeler stated that plaintiff has skills transferable to sedentary work, such as adjusts to social situations, expands and uses professional knowledge, makes connections and develops theories, participates as a member of a team, solicits input, cooperates with others and takes time to listen to others' problems. (Tr. 94). Wheeler testified that these skills are transferable to sedentary, semi-skilled jobs, such as information clerk and cashier.

The ALJ posed a third hypothetical of a person with the same age, education and work experience as Whitener, who would need an extra hour to lie down in addition to the usual and customary work breaks each day. Wheeler stated that such an individual could not perform any jobs in the national economy. (Tr. 95).

Upon cross-examination by plaintiff's attorney, Wheeler testified that a person who is unable to function during three days per month and consistently misses at least three days of work per month could not sustain competitive employment. Plaintiff's attorney posed another hypothetical of a person who, because of chronic fatigue syndrome and fibromyalgia, would be off task during the day or occasionally have difficulty doing simple, routine, repetitive work. Wheeler testified that such a person could not perform any sedentary, semi-skilled jobs. (Tr. 96). She stated that a person who either was off task for

14

up to one-third of the day or occasionally has difficulty remembering simple, routine tasks would be precluded from performing semi-skilled work.  (Tr. 97).

D.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 45-49).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.      Plaintiff's Motion to Submit New Evidence

Whitener attached to her memorandum more than 100 pages of documents from medical and non-medical sources, which are not in the record, and some materials that she submitted to the Appeals Council, which the Appeals Council declined to consider because they are dated after the ALJ's opinion.  Record Doc. No. 16-1.  Some of the medical records submitted to this court pre-date plaintiff's alleged onset date of May 30, 2007, while some are dated during the relevant time period between her alleged onset date and her last insured date of March 31, 2013.  The majority of the medical records and all of the letters from Whitener's employer, relatives and friends are dated after the ALJ's decision on March 21, 2014.  Plaintiff has also submitted "additional supporting documentation" consisting of a family history that she wrote, apparently recently, and newspaper articles and court records regarding her family dated many years before her alleged onset date. Contained within her memorandum and its attachments are Whitener's allegations of

additional facts, purporting to explain the records she seeks to submit.  She argues that all of these materials support a finding that she was disabled during the relevant time period.

It is well established that this court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate.  <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).  Thus, I must determine whether this case should be remanded so the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that it is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate the evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314 (5th Cir. 2010); <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008); <u>Martinez</u>, 252 F. App'x at 587; <u>Ripley</u>, 67 F.3d at 555; <u>Haywood</u>, 888 F.2d at 1471.

"Evidence that was not in existence at the time of the administrative . . . proceedings, meets the 'new' requirement for remand to the [Commissioner]."  <u>Hunter v. Astrue</u>, 283 F. App'x 261, 262 (5th Cir. 2008) (quotation omitted) (citing <u>Haywood</u>, 888 F.2d at 1471). However, evidence that "is <u>merely cumulative</u> of that already in the administrative record is <u>not 'new' evidence</u> that would support a remand under § 405(g)."  <u>Wilson v. Astrue</u>, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing <u>Pierre v. Sullivan</u>, 884 F.2d 799, 803 (5th Cir. 1989); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1058 (5th Cir. 1987))

(emphasis added); accord Ferrari, 435 F. App'x at 314-15; Perkins v. Shalala, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983).

New evidence must also be material to warrant a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383. The new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Id. "For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)).

Finally, "[t]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij v. Chater, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. Dec. 4, 1996)); see also Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) (quotation and citation omitted) ("Good cause does not exist when the claimant had the opportunity to obtain the new

evidence before the administrative record closed but failed to do so without providing sufficient explanation.").  The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record."  Wilson, 2009 WL 2341803, at *4 (citing Pierre, 884 F.2d at 803).

I find that the information submitted by Whitener is not new and material, as defined by the Fifth Circuit.  First, the records that pre-date her last insured date of March 31, 2013 and the ALJ's decision are not new.

Second, the records from that time period are not material.  In her memorandum, plaintiff admits that her attorney (1) made a tactical decision not to submit to the ALJ the records from her social worker therapist, Sherry Richmond-Frank, dated February 21 through November 5, 2008, and (2) did not realize that certain other medical records dated before her date last insured were not in the record.  Record Doc. No. 16 at pp. 2-3.

Licensed professional counselors, including social workers, are not "acceptable medical sources," 20 C.F.R. §§ 404.1513(a), 416.913(a), and "[o]nly 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight."  Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009).  The record before the ALJ contains numerous records from acceptable medical sources during

the relevant time period.  The social worker's records are not material because there is no reasonable possibility that they would have changed the outcome of the ALJ's decision.

Nor has Whitener shown a reasonable possibility that the records from Drs. Robert Songy, Vinicio Madrigal, Sarah Wilhelm, Barry Goldman and Candace Moore, all dated before her date last insured, would have changed the outcome.  My review of those records reveals that they document the same or similar symptoms, diagnoses and treatments that are reported in the voluminous medical records considered by the ALJ.

Third, plaintiff has not shown good cause for her failure to include these materials in the record.  She bears the burden of proof to establish disability and her counsel's failure to submit evidence is not good cause to justify a remand.  Taylor v. Comm'r of Soc. Sec., 43 F. App'x 941, 943 (6th Cir. 2002); York v. Colvin, No. 3:13-CV-918, 2014 WL 1050625, at *6 (S.D. Miss. Mar. 17, 2014) (citing Lister v. Astrue, No. 3:10CVl436-BD, 2011 WL 4424390, at *8 (N.D. Tex. Sept. 22, 2011)); Albritton v. Astrue, No. 3-10-CV-1860-BD, 2012 WL 1019610, at *8 (N.D. Tex. Mar. 27, 2012) (citing Pierre, 884 F.2d at 803; Geyen v. Sec'y of Health & Human Servs., 850 F.2d 263, 264 (5th Cir. 1988)).

As to the medical evidence dated after Whitener's last insured date of March 31, 2013, although it is new in that it did not exist at the time of the administrative proceedings, it is not material because it does not relate to the period for which benefits were denied, which extended only from her alleged onset date of May 30, 2007 to her date last insured. Joubert, 287 F. App'x at 383-84; Sanchez v. Barnhart, 75 F. App'x 268, 270 (5th Cir. 2003)

(citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)); <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994).

Whitener argues that the new evidence contains retrospective medical opinions.

While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status.  Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability <u>absent evidence of an actual disability during the time of insured status</u>.

<u>McLendon v. Barnhart</u>, 184 F. App'x 430, 432 (5th Cir. 2006) (citing <u>Likes v. Callahan</u>, 112 F.3d 189 (5th Cir. 1997); <u>Ivy v. Sullivan</u>, 898 F.2d 1045 (5th Cir. 1990)) (emphasis added).  Although retrospective medical diagnoses may constitute relevant evidence of the onset date of disability, they must at least be corroborated by evidence relating back to the claimed period of disability.  <u>Luckey v. Astrue</u>, 458 F. App'x 322, 326-27 (5th Cir. 2011) (citing <u>Likes</u>, 112 F.3d at 191).

The ALJ found that Whitener had severe impairments of chronic fatigue syndrome, fibromyalgia and ulcerative chronic proctitis, but the entirety of the evidence did not support plaintiff's less than credible allegations of functional limitations that would prevent her from performing her past relevant work.  Nothing in the new evidence suggests that any of plaintiff's previously diagnosed impairments is the type of condition that follows such a well-known progression that a date of disability can be inferred after the fact without contemporaneous corroboration.  <u>Mason v. Comm'r of Soc. Sec.</u>, 430 F. App'x 830, 832 (11th Cir. 2011) (citing <u>Payne v. Weinberger</u>, 480 F.2d 1006, 1007-08 (5th Cir. 1973);

Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998)); Cohen v. Astrue, 258 F. App'x 20, 27-28 (7th Cir. 2007) (citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006)); Estok, 152 F.3d at 640; Rudder v. Colvin, No. 11 CV 50286, 2014 WL 3773565, at *14 (N.D. Ill. July 30, 2014); Brown v. Colvin, No. 3:12CV871-CSC, 2013 WL 5493949, at *6 (M.D. Ala. Oct. 2, 2013) (citing Mason, 430 F. App'x at 832).  The ALJ found no such substantial contemporaneous evidence.  As discussed below in connection with plaintiff's multiple assignments of error, the ALJ's conclusion is substantially supported by the evidence as a whole.

Whitener has failed to demonstrate a reasonable possibility that the new evidence would change the outcome of the ALJ's decision.  To the extent the new medical evidence documents plaintiff's pre-existing impairments of chronic fatigue syndrome, fibromyalgia and ulcerative chronic proctitis, which the ALJ found were severe, the evidence is merely cumulative of the administrative record and there is no reasonable possibility that it would change the Commissioner's decision.  Lenoir v. Apfel, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing Haywood, 888 F.2d at 1471; Pierre, 884 F.2d at 803); Perkins, 1994 WL 523788, at *3; Martin v. Barnhart, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (citing Pierre, 884 F.2d at 803).

To the extent the new medical evidence indicates that Whitener had more severe symptoms or recently diagnosed conditions that developed after March 31, 2013, the evidence demonstrates at best a deterioration of a previously non-disabling condition.

"Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition." Lenoir, 2000 WL 1568184, at *1; accord McLendon, 184 F. App'x at 432.

To the extent plaintiff has obtained new statements from her treating physicians that she is now or was incapacitated from working before her date last insured, such statements are not medical opinions and do not mean that she is disabled for purposes of the Act, because that is a determination that only the Commissioner may make. Miller v. Barnhart, 211 F. App'x 303, 305 (5th Cir. 2006); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989). Therefore, no reasonable possibility exists that the new medical evidence dated after March 31, 2013 would have changed the ALJ's determination that plaintiff was not disabled before that date.

The memoranda from Whitener herself; the letters from her employer, relatives and friends; and the newspaper articles and court records regarding her family, regardless of their dates, are also not material. Only medical evidence from acceptable medical sources can establish a medically determinable, severe impairment. Thibodeaux, 324 F. App'x at 445. These non-medical source materials would not change the outcome.

Finally, plaintiff "does not provide a satisfactory explanation for [the evidence's] absence from the initial proceedings." Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995). She proffers no explanation why she could not have, before the ALJ's decision, testified

about the information contained in her memoranda, obtained letters or testimony from her family and friends, or obtained medical source statements that purport to establish her functional limitations during the relevant time period.  She has not shown good cause for her failure to incorporate the information in the administrative proceedings.  Dennison, 2010 WL 744935, at *7 (citing Pierre, 884 F.2d at 803).

Accordingly, plaintiff's motion to submit new evidence is denied.

F.      Plaintiff's Appeal

1.      The Appeals Council did not err by failing to consider new evidence submitted to it after the ALJ's decision.

The ALJ found at the second step of the sequential evaluation that plaintiff's traumatic brain disorder and post-traumatic stress disorder, which were diagnosed by neurologist Terence C. D'Souza, M.D., during her first visit to him on November 22, 2013 (Tr. 561), and that her major depressive disorder, which was diagnosed by clinical psychologist Georgeanna Leavesley, Ph.D., during plaintiff's first visit in December 2013 (Tr. 519), are not medically determinable impairments.  Whitener contends that the Appeals Council erred by failing to consider new and material evidence that she submitted to it. The evidence consists of five medical records from her treating physicians, all dated ten months or more after her date last insured of March 31, 2013 (Tr. 16-37); and a letter dated May 6, 2014 from her former employer, Gerald Pember, D. Min., containing his lay observations about her health problems during her last year of teaching.  (Tr. 236-37).  She argues that the evidence supports presumptive disability under Listing 12.00 for mental

23

disorders and that the Appeals Council erred by failing to state what consideration it gave

to Dr. Pember's letter.  Because the ALJ found that plaintiff's mental impairments were not

medically determinable, the ALJ did not consider at the third step whether Whitener met

any impairment under Listing 12.00.  The Appeals Council denied plaintiff's request for

review and held that the new medical records did not affect the ALJ's decision because

they concerned a time period after Whitener's date last insured.  The Appeals Council did

not mention Dr. Pember's letter.  (Tr. 10).

> When confronted with new and material evidence, the Appeals
> Council "shall evaluate the entire record including the new and material
> evidence. . . .  It will then review the case if it finds that the administrative
> law judge's action, findings, or conclusion is contrary to the weight of the
> evidence currently of record."  However, the regulations do not require the
> Appeals Council to discuss the newly submitted evidence, nor is the Appeals
> Council required to give reasons for denying review.

Whitehead v. Colvin, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b))

(citing Sun v. Colvin, 793 F.3d 502, 511 (5th Cir. 2015)) (ellipses in original).

The Appeals Council did not err in this case.  First, when the Appeals Council denies

review, it is "not error for the Appeals Council to omit a discussion of the additional . . .

records submitted," such as Dr. Pember's letter.  Id.

Second,

> [t]he Appeals Council is permitted to consider additional evidence only if it
> is new, material, and related to the period on or before the ALJ's hearing
> decision.  This court, in turn, may remand for the consideration of additional
> evidence only if it is new and material, and if there is good cause for the
> claimant's failure to incorporate the evidence into the record in a prior
> proceeding.

Martinez, 252 F. App'x at 587 (citing 42 U.S.C.A. § 405(g); 20 C.F.R. §§ 404.970(b), 404.976(B); Haywood, 888 F.2d at 1471) (emphasis added). Thus, the same standards for new and material evidence and the requirement to show good cause for failing to include the evidence in the record that I discussed in the preceding section of this report and recommendation apply to plaintiff's argument that the Appeals Council erred by not considering her new evidence.

The records submitted to the Appeals Council do not justify a remand for the same reasons of cumulativeness, lack of materiality and failure to show good cause that support my denial of her motion to submit new evidence to this court. The relevant time period to establish disability is from Whitener's alleged onset date of May 30, 2007 through her date last insured of March 31, 2013. The new records all post-date that period. Because they do not relate to the period for which benefits were denied, they are immaterial. Hernandez v. Astrue, 278 F. App'x 333, 338 (5th Cir. 2008) (citing 20 C.F.R. § 404.1502); Sanchez, 75 F. App'x at 270 (citing Shave, 238 F.3d at 597).

The new medical records from plaintiff's rheumatologist Luis R. Espinoza, M.D., dated May 19, 2014 (Tr. 16), and her gastroenterologist Herbert K. Mayer, M.D., dated May 13, 2104 (Tr. 19-21), are largely cumulative of the extensive records from these long-term treating physicians that the ALJ reviewed. Whitehead, 820 F.3d at 780; Bowman, 706 F.2d at 568. Dr. Pember's letter is largely cumulative of plaintiff's own testimony. The diagnoses of mental disorders by neuropsychologist Michael D. Chafetz, Ph.D., on

25

January 20, 2014 (Tr. 32); Dr. D'Souza on April 10, 2014 (Tr. 37); and Dr. Leavesley on May 14, 2014 (Tr. 17), are largely cumulative of the records from Drs. D'Souza and Leavesley that the ALJ reviewed.  Cumulative evidence is not "new" evidence.

These diagnoses do not establish that Whitener had a severe mental impairment for purposes of the Act.  "The severity of an impairment is measured in terms of its effect on the claimant's ability to work.  A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work." Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013), aff'd, 586 F. App'x 505 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)).

In support of their diagnoses of traumatic brain injury, post-traumatic stress disorder and major depressive order, these new treating physicians noted that Whitener had suffered

a brain injury and traumatic event in 1997.  However, those facts and diagnoses do not establish that plaintiff had severe functional limitations before her date last insured, much less that she met the "demanding and stringent" requirements of a listed impairment, Heck v. Colvin, No. 16-30871, 2017 WL 83387, at *2 (5th Cir. Jan. 9, 2017) (quotations and citations omitted), which "lead to a presumption of disability[,] making further inquiry unnecessary."  Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco, 27 F.3d at 162).  Whitener was able to work for many years after those events occurred.

The statements in the letters from Dr. Espinoza on May 19, 2014 (Tr. 16); Dr. Leavesley on May 14, 2014 (Tr. 18); and Dr. Mayer on May 13, 2014 (Tr. 20), that plaintiff cannot work and is disabled are not medical opinions entitled to any weight, but are legal conclusions reserved to the Commissioner.  Miller, 211 F. App'x at 305; Frank, 326 F.3d at 620; Chambliss, 269 F.3d at 522; Tamez, 888 F.2d at 336 n.1.  The ALJ considered a similar statement from Dr. Mayer dated October 16, 2013, but rejected it as unsupported by his long-term treatment notes.  (Tr. 49, 505).  Therefore, no reasonable possibility exists that the new evidence would have affected the ALJ's determination that plaintiff was not disabled before March 31, 2013, her date last insured.

In addition, Whitener "does not provide a satisfactory explanation for [the evidence's] absence from the initial proceedings."  Leggett, 67 F.3d at 567.  She has

27

proffered <u>no explanation</u> why she could not have, before the ALJ's decision, obtained a letter from Dr. Pember or opinions from her treating physicians or sought mental health testing and treatment from a psychologist or psychiatrist, particularly in light of her allegations that her physical and mental impairments were disabling for almost six years before she applied for DIB.  The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record."  <u>Wilson</u>, 2009 WL 2341803, at *4 (citing <u>Pierre</u>, 884 F.2d at 803).  Medical opinions like those that Whitener submitted to the Appeals Council could have been obtained "at any time.  [Plaintiff] has not offered good cause why the [testing and evaluations were] not performed earlier."  <u>Pierre</u>, 884 F.2d at 804.

Accordingly, this assignment of error lacks merit.

> 2.    The ALJ did not err by failing to consider whether Whitener's mental <u>impairments meet Listing 12.00 for mental disorders.</u>

> 3.    The ALJ used appropriate legal standards to analyze plaintiff's mental <u>impairments and substantial evidence supports her findings.</u>

The ALJ found at the second step of the sequential evaluation that plaintiff's post-traumatic stress disorder and traumatic brain disorder, which were first diagnosed by Dr. D'Souza on November 22, 2013 (Tr. 560-61), are not medically determinable impairments because the medical evidence did not support that they had lasted or could be expected to last for a continuous period of 12 months.  In these related assignments of error, Whitener

argues that the ALJ should have held the record open for the results of neuropsychological tests that Dr. D'Souza ordered, which Dr. Chafetz performed on January 20, 2014 (Tr. 32), and for a post-testing psychiatric evaluation that Dr. D'Souza recommended, which was performed by Teri Schwarz, M.D., on May 7, 2014.  Record Doc. No. 16-1 at pp. 96-101. Alternatively, Whitener contends that the ALJ should have ordered a consultative examination to evaluate her mental impairments.  Plaintiff asserts that the ALJ also erred by failing to find that her mental disorders met Listing 12.00.[7]  Having found no medically determinable mental impairment at step two, the ALJ did not consider at step three whether Whitener met any of the listings for a mental disorder.

Plaintiff's attorney argued at the hearing on December 11, 2013 that Whitener met Listing 12.04 for affective disorders.  (Tr. 62).  At the hearing, the ALJ agreed to hold the record open for 15 days to allow Whitener to submit additional evidence.  (Tr. 59-60).  On December 17, 2013, the ALJ wrote to plaintiff's attorney and confirmed a deadline of December 30, 2013 to submit new evidence.  (Tr. 145).  Whitener neither requested more time nor submitted any additional evidence before the ALJ issued her decision on March 21, 2014, more than 11 weeks after the submission deadline.

While the ALJ has a duty to fully and fairly develop the record, the "claimant has the burden of proof in establishing his disability.  If the

---

[7]Section 12.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations is not actually a "listing."  It is an introductory section setting forth general criteria for how the Commissioner evaluates mental disorders in nine diagnostic categories, such as organic mental disorders (§ 12.02), affective disorders (§ 12.04) and other disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).  These categories are the "listings" that, if met, establish presumptive disability.

claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence."  It was Plaintiff's burden to prove he was disabled.  At the request of Plaintiff's attorney, the ALJ agreed to hold the record open for two additional weeks after the hearing for Plaintiff to submit these records, yet Plaintiff failed to provide these records.  Considering this, the ALJ was under no obligation to obtain more medical records from [plaintiff's doctor].

Banks v. Colvin, No. 13-189-JJB, 2014 WL 4660847, at *6 n.4 (M.D. La. Sept. 17, 2014) (quoting Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989)) (citing Ripley, 67 F.3d at 557); accord Reynaud v. Astrue, 226 F. App'x 401, 403 (5th Cir. 2007) (citing Wren, 925 F.2d at 128).  The ALJ was not required to wait for Whitener to submit more evidence.

The decision to obtain a consultative examination is within the ALJ's discretion. A consultative examination must be ordered only when necessary to develop a full and fair record.  Id. (citing Anderson, 887 F.2d at 634); Pierre, 884 F.2d at 802; Haywood, 888 F.2d at 1472.  "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence."  Hernandez v. Astrue, 269 F. App'x 511, 515 (5th Cir. 2008) (citations omitted).  The voluminous record in the instant case contained sufficient evidence for the ALJ to make an informed decision without acquiring a consultative examination.

In addition, the Commissioner will not purchase a consultative examination in claims for DIB when the claimant's insured status has expired and there is "no possibility of establishing" a disability onset before the last insured date.  20 C.F.R. § 404.1519b(a).

Even if the ALJ erred by failing to obtain a consultative examination, the court "will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.  To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result."  Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (quotation and citation omitted); accord Reynaud, 226 F. App'x  at 402; Norden v. Barnhart, 77 F. App'x 221, 223, 224 (5th Cir. 2003).  As previously discussed, none of the new evidence regarding plaintiff's mental health dated after her last insured date would likely change the outcome.  Similarly, there is no reasonable possibility that a consultative mental health examination performed after her last insured date would have changed the ALJ's decision.  Thus, Whitener suffered no prejudice from the error, if any, in failing to order a consultative examination.

Accordingly, these assignments of error lack merit.

4.      The ALJ properly considered plaintiff's non-substantial gainful work activity after her alleged onset date.

5.      The ALJ properly considered plaintiff's daily activities and testimony.

These related assignments of error concern the ALJ's assessment of plaintiff's residual functional capacity and credibility.  The ALJ found at step four of the evaluation that Whitener had the residual functional capacity to perform light work with the restrictions noted in the decision.  Although the ALJ acknowledged that Whitener had engaged in non-substantial gainful work activity as a tutor and substitute teacher after her

31

alleged onset date,  plaintiff argues that the ALJ improperly considered these unsuccessful work attempts as equivalent to substantial gainful work activity.  In between the ALJ's findings that Whitener's reported activities of daily living were not as limited as plaintiff testified and that the objective medical evidence did not support plaintiff's allegations of disability, the ALJ stated:  "The fact that the claimant's impairments did not prevent her from working [in 2008 and 2010] strongly suggests that it [sic] would not currently prevent work."  (Tr. 48).  Plaintiff also contends that the ALJ also mischaracterized her daily activities and testimony when assessing her residual functional capacity and credibility.

The ALJ must determine the claimant's residual functional capacity, which "is a determination of the most the claimant can still do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." Perez, 415 F.3d at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  Taylor v. Astrue, 706 F.3d 600, 602-03 (5th Cir. 2012) (citing Ripley, 67 F.3d at 557); Joseph-Jack v. Barnhart, 80 F. App'x 317, 318 (5th Cir. 2003) (citing 20 C.F.R. §§ 416.946).

The ALJ found that Whitener has the residual functional capacity to perform light work with the limitations described in the decision.  Contrary to plaintiff's arguments, the ALJ properly considered Whitener's past work attempts, her activities of daily living and her testimony in light of the entire record when finding that her statements concerning the intensity, persistence and limiting effects of her conditions were not entirely credible.

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462.

The ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" Hernandez, 278 F. App'x at 339 (quoting Falco, 27 F.3d at 164). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing  Newton, 209 F.3d at 459). The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163).

"The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." Clary v. Barnhart, 214 F.

App'x 479, 482 (5th Cir. 2007) (citing Falco, 27 F.3d at 163).  The ALJ must review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence.  Luckey, 458 F. App'x at 324; Giles v. Astrue, 433 F. App'x 241, 249 (5th Cir. 2011); Newton, 209 F.3d at 452.

The ALJ complied with these requirements in the instant case.  She thoroughly and accurately reviewed the medical evidence and found that Whitener's credibility was weakened by inconsistencies between her allegations of a disabling impairment since May 30, 2007 and the medical treatment notes, which did not support her allegations. Crucially, the ALJ found that plaintiff's "testimony was clearly disproportionate to the medical evidence." The ALJ explained that Whitener generally had normal findings on physical examination, did not complain of significant symptoms until after her date last insured and maintained stable symptoms over the years with diet and medications, requiring no aggressive management.  These findings are substantially supported by the medical records.  "The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible." Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Hollis v. Bowen, 837 F.2d 1378, 1384-85 (5th Cir. 1988); Leggett, 67 F.3d at 565).

Even if the ALJ overstated Whitener's unsuccessful work activity, procedural perfection in administrative proceedings is not required as long as the substantial rights of

a party have not been affected.  Hurst v. Colvin, 639 F. App'x 1018, 1021 (5th Cir. 2016) (citing Audler, 501 F.3d at 448).  Any error in this regard was harmless in light of the substantial evidence that otherwise supported the ALJ's credibility and residual functional capacity findings.  Botsay v. Colvin, 658 F. App'x 715, 718 (5th Cir. 2016) (citing Qualls v. Astrue, 339 F. App'x 461, 464 (5th Cir. 2009)).

Accordingly, these assignments of error lack merit.

6.     The ALJ properly weighed the evidence from plaintiff's treating physician Lawrence Giambelluca, M.D.

7.     The ALJ properly weighed the evidence from plaintiff's treating physician Ahmet Bedestani, M.D.

In these two assignments of error, Whitener argues that the ALJ's analysis of the records from her treating physicians, Lawrence Giambelluca, M.D., and Ahmet Bedestani, M.D., failed to address particular entries or emphasized different elements of the notes than plaintiff wishes to emphasize.  Her arguments about the weight of the evidence lack merit.[8]

This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman, 544 F. App'x at 360.  The ALJ in this case, as she is required to do, assessed the credibility of the witnesses and resolved conflicts in the evidence.  "The ALJ 'is entitled to determine the credibility of medical experts as well as

---

[8]Much of plaintiff's argument relies on factual allegations in her memorandum that are not in the administrative record.  Such information cannot be considered.  This court's function is limited to determining whether there is substantial evidence in the record to support the Commissioner's final decision.  Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363.

lay witnesses and weigh their opinions accordingly.'" <u>Ramirez v. Colvin</u>, 606 F. App'x

775, 779 (5th Cir. 2015) (quoting <u>Scott</u>, 770 F.2d at 485); <u>accord</u> <u>Fontenot v. Colvin</u>, No.

16-30075, 2016 WL 5400419, at *2 (5th Cir. Sept. 27, 2016) (citing <u>Moore v. Sullivan</u>, 919

F.2d 901, 905 (5th Cir. 1990)); <u>Yates v. Colvin</u>, 606 F. App'x 225, 229 (5th Cir. 2015)

(citing <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir. 1994)); <u>Williams v. Colvin</u>, 575

F. App'x 350, 354 (5th Cir. 2014) (quoting <u>Greenspan</u>, 38 F.3d at 237).

     The ALJ's summary of the medical evidence was thorough and accurate, and her

findings regarding the weight of the evidence are supported by substantial evidence.

Accordingly, these assignments of error lack merit.

     8.    Substantial evidence supports the ALJ's residual functional capacity
             assessment.

     Based on plaintiff's residual functional capacity for light work with the restrictions

noted in the decision and on the vocational expert's testimony, the ALJ found that plaintiff

can perform her past relevant work as an elementary school teacher.  Whitener argues that

the residual functional capacity assessment is not supported by substantial evidence

because the ALJ did not consider Dr. Espinoza's notes properly.  Plaintiff also contends

that the ALJ's questions to the vocational expert did not incorporate all of her limitations.

     As discussed above, the ALJ's residual functional capacity findings are supported

by substantial evidence.  Plaintiff's arguments regarding Dr. Espinoza's notes, like her

arguments regarding the records of Drs. Giambelluca and Bedestani, amount to mere

disagreement about the weight to be assigned to those notes. The ALJ's decision reflects that she considered and weighed Dr. Espinoza's notes along with the entire record.

Whitener argues that the ALJ should have re-contacted Dr. Espinoza because the ALJ only summarized the doctor's notes from one of plaintiff's visits to him and stated that his handwritten notes are often illegible. The ALJ is not required to discuss every piece of evidence. "[W]hen dealing with such an extensive and multi-faceted record, there will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here." Giles, 433 F. App'x at 251 (citations omitted).

The ALJ must re-contact a treating physician whose records are inadequate in some way only if the entire record is insufficient to permit the ALJ to render a decision. 20 C.F.R. § 404.1520b(c)(1). The medical records in the instant case are extensive. The ALJ had sufficient medical opinion evidence based on treating physicians' personal examinations and treatment of Whitener to obviate any need to re-contact her doctors to resolve conflicts or ambiguities in the records. Jones v. Astrue, 691 F.3d 730, 733 (5th Cir. 2010); Cornett v. Astrue, 261 F. App'x 644, 648-49 (5th Cir. 2008); Bird v. Colvin, No. 3:15-CV-0063-BH, 2016 WL 1273463, at *12-13 (N.D. Tex. Mar. 31, 2016) (citing Cornett, 261 F. App'x at 648; Newton, 209 F.3d at 457). In addition, because plaintiff was

represented by counsel and testified at the hearing, the ALJ was under no obligation to obtain more medical records from her physicians.  Jones, 691 F.3d at 734.

Dr. Espinoza's notes confirm that, as the ALJ stated, plaintiff had fibromyalgia symptoms on some days depending on her activities, but that her disorder was under control during the relevant time period.  Whitener routinely reported that she was doing well, and Dr. Espinoza considered her condition stable.  (Tr. 306-08, 310-11, 319-21, 323-24).  Although the ALJ did not state in her decision the number of active tender points on each of plaintiff's physical examinations by Dr. Espinoza, that defect, if it is a defect, in the ALJ's summary of the notes did not prejudice Whitener and provides no basis for a remand.  Botsay, 658 F. App'x at 718; Qualls, 339 F. App'x at 464; Hurst, 639 F. App'x at 1021; Audler, 501 F.3d at 448.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  As previously discussed, the ALJ's credibility assessment was based on appropriate legal standards and is supported by substantial evidence.

The ALJ found that plaintiff had severe impairments of chronic fatigue syndrome, fibromyalgia and ulcerative chronic proctitis.  However, mere diagnosis and treatment of the symptoms of an impairment does not establish a claimant's disability claims.  Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames, 707 F.2d at 165);

McLendon, 184 F. App'x at 431; Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003);

Estok, 152 F.3d at 640; Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v.

Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991).  "If a claimant has

a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was

actually disabled during the relevant time, not whether a disease existed that ultimately

progressed to a disabling condition." McLendon, 184 F. App'x at 431.  Whitener "'must

show that she was so functionally impaired [by her diagnosed impairment] that she was

precluded from engaging in any substantial gainful activity.'" Bordelon, 281 F. App'x at

422 (quoting Hames, 707 F.2d at 165) (emphasis added); accord Taylor, 706 F.3d at 603;

Randall, 570 F.3d at 658-59; Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

    The ALJ incorporated in her residual functional capacity determination all of

plaintiff's symptoms and functional limitations that the ALJ found credible, based on the

entire record, which, as the ALJ stated, did not substantially support Whitener's allegations

of disabling limitations from her alleged onset date of May 30, 2007 through her date last

insured of March 31, 2013.  Once the ALJ determines residual functional capacity, she may

rely on vocational expert testimony to reach conclusions about the specific requirements

of a particular occupation.  Dominguez-Herrera v. Astrue, 334 F. App'x 651, 654 (5th Cir.

2009) (citing Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995)); Villalpando v. Astrue,

320 F. App'x 208, 211 (5th Cir. 2009); Weary v. Astrue, 288 F. App'x 961, 967 (5th Cir.

2008); Leggett, 67 F.3d at 565.

The ALJ posed a hypothetical to the vocational expert, Wheeler, that accounted for plaintiff's age, education, work experience and the physical limitations that the ALJ found credible.  Wheeler testified that a person with that residual functional capacity could perform plaintiff's past relevant work as an elementary school teacher.

Whitener was represented by counsel at the hearing.  An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Vaught v. Astrue, 271 F. App'x 452, 456 (5th Cir. 2008); Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

Plaintiff's counsel questioned Wheeler about the effects of Whitener's alleged impairments of being unable to function during three days per month, consistently missing at least three days of work per month, being off task for up to one-third of the day and/or occasionally having difficulty remembering simple, routine tasks.  Wheeler testified that a person with any of those impairments could not perform any jobs.  However, the ALJ found that the record did not support such limitations.  The ALJ applied proper legal principles in evaluating plaintiff's residual functional capacity and posing hypothetical

questions to the vocational expert.  Wheeler's testimony is substantial evidence upon which the ALJ properly relied.

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The Appeals Council did not err by failing to consider new and material evidence. The ALJ applied appropriate legal standards to assess Whitener's mental health conditions and was not required to consider whether her mental impairments, which were not medically determinable, met any listing.  The ALJ properly considered plaintiff's non-substantial gainful work activity, activities of daily living and testimony in assessing her credibility.  The ALJ properly considered the medical records from plaintiff's treating physicians.  The ALJ applied appropriate legal standards to assess Whitener's residual functional capacity and to pose hypothetical questions to the vocational expert.  The ALJ's findings are supported by substantial evidence.

**<u>RECOMMENDATION</u>**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___19th___ day of January, 2017.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective
December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.